**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**
_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                                       Case No. 14-20016

LOUIS PEGRAM,

        Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE**

Defendant Louis Pegram pleaded guilty to possession of a stolen firearm, 18 U.S.C. § 922(j). (ECF No. 30, PageID.144.) On February 3, 2015, the court sentenced him to 120 months imprisonment. (ECF No. 31, PageID.163.) Defendant's projected release date is in May 2024. (ECF No. 43-1, PageID.234.)

Defendant moves to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A). (ECF No. 38.) He argues that the health risks presented by the Coronavirus Disease ("COVID-19") while incarcerated at USP Leavenworth justify his immediate release. The government has filed a response and Defendant has replied. (ECF Nos. 43, 44.) The court has reviewed the record and does not find a hearing to be necessary. E.D. Mich. L.R. 7.1(f)(2). Defendant's motion will be denied.

A court may reduce a term of imprisonment if it determines "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The court must also weigh the sentencing factors provided under 18 U.S.C. § 3553(a) and

determine if a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018) is the "applicable policy statement[]" with which courts must comply. 18 U.S.C. § 3582(c)(1)(A). Section 1B1.13 of the Sentencing Guidelines explains that a defendant must "not [be] a danger to the safety of any other person or to the community" under 18 U.S.C. § 3142(g) and must fit within at least one of four categories of "extraordinary and compelling reasons." Those categories are: "Medical Condition of the Defendant," "Age of the Defendant," "Family Circumstances," and "Other Reasons." U.S. Sentencing Guidelines Manual § 1B1.13. The category of "Other Reasons" requires a determination from the Director of the Bureau of Prisons ("BOP") that "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons" outlined in the other three categories. *Id.* § 1B1.13 cmt. n.1(D). The BOP has released Program Statement 5050.50 to guide its determination of extraordinary and compelling circumstances.[1] Federal Bureau of Prisons, U.S. Department of Justice, *Program Statement 5050.50: Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)* (2019).

---

[1] After the passage of the First Step Act in 2018, district courts in the Sixth Circuit remain divided over whether only the BOP Director may determine if a defendant's circumstances fall within the category of "Other Reasons." *Compare United States v. Bolze*, --- F. Supp. 3d ----, 2020 WL 2521273, at *7 (E.D. Tenn. May 13, 2020) (quoting U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1(D)) ("[O]nly the 'Director of the Bureau of Prisons' can determine that such 'other reasons' exist."), *with United States v. Young*, --- F. Supp. 3d ----, 2020 WL 1047815 (M.D. Tenn. Mar. 4, 2020) ("[F]ederal judges are no longer constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction.").

In all, a defendant seeking compassionate release must present "extraordinary and compelling" circumstances, must have § 3553(a)'s sentencing factors that weigh in his favor, must not be a threat to others as determined by § 3142(g), and must fit within one of the four categories in § 1B1.13 of the Sentencing Guidelines. 18 U.S.C. § 3582(c)(1)(A); U.S. Sentencing Guidelines Manual § 1B1.13; *see also United States v. Allen*, --- F. App'x ----, 2020 WL 5117947 (6th Cir. Aug. 27, 2020).

Before the court may consider a motion for compassionate release, Defendant must exhaust administrative remedies. *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020) (quotation removed) ("When properly invoked, mandatory claim-processing rules must be enforced."). Under § 3582(c)(1)(A), an inmate may seek compassionate release himself only if he submits a request for compassionate release to his warden and he has "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request . . . whichever is earlier."

In order to fulfil the exhaustion requirement, Defendant's request to the BOP must explain the basis for his release. For instance, Defendant cannot state to the BOP that his request is predicated on familial concerns, such as the incapacitation of a spouse, and then assert to the court that his medical conditions justify release. Allowing a prisoner to present one description of his circumstances to the BOP and another to the court would undermine the statutory scheme of administrative exhaustion that Congress purposefully designed. It would prevent "the agency [from] address[ing] the issues [in the request] on the merits," the purpose of exhaustion. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). BOP regulations state that a prisoner must present to the agency

"[t]he extraordinary or compelling circumstances that the inmate believes warrant consideration." 28 C.F.R. § 571.61(a)(1). If the alleged "extraordinary or compelling circumstances" are not presented, *id.*, the BOP has not had an opportunity to address them and the prisoner's claim has not been fully exhausted. *See Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746-47, 749 (6th Cir. 2019) (citing *Woodford*, 548 U.S. at 90-91) (recognizing issue exhaustion when statutes state "in more general terms . . . 'administrative remedies [must be] exhausted' . . . [and] an agency's rules so require," such as requirements that parties "indentify[] specific issues to be considered [by the agency]"); *Sims v. Apfel*, 530 U.S. 103, 108 (2000) (finding that an agency regulation requires issue exhaustion when it states that an individual must "list the specific issues to be considered").

Defendant sent three requests to the warden of his facility. The first on April 15, 2020, asked that he be considered "for the CARES ACT." (ECF No. 39-1, PageID.197.) The CARES Act expanded the authority of the BOP to place a prisoner on home confinement. *See Alam*, 960 F.3d at 836. The second message, on May 1, 2020, asked explicitly "for home confinement." (*Id.*, PageID.198.) Neither of these communications presented requests for compassionate release and do not satisfy the exhaustion requirement. In fact, the Sixth Circuit recently affirmed denial of compassionate release when a prisoner sought merely a transfer to home confinement under 18 U.S.C. § 3624(c)(2) and the CARES Act and "made no mention of compassionate release." *United States v. Desjardins-Racine*, 817 F. App'x 219 (6th Cir. 2020).

Defendant sent a third message on May 3, 2020, which followed up on the May 1 request for home confinement. (ECF No. 39-1, PageID.199.) He briefly stated that his

prior convictions should have "no hold on a compassionate release do [sic] to my medical issue[s]." (*Id.*) Thirty days have passed since the third message was sent. *See* 18 U.S.C. § 3582(c)(1)(A) (permitting exhaustion if thirty days pass from the time a request for release is received by the BOP). The warden of Defendant's facility responded to Defendant's three messages, stating that Defendant did not qualify "for Early Home Confinement." (*Id.*, PageID.200.)

The government points out the focus of Defendant's communications was his request for home confinement; the BOP treated the messages as such. (*Id.*) Even so, the government contends that because Defendant did not state what medical issues support his release, exhaustion was not completed. (ECF No. 42, PageID.219-20.) Although the court is not certain that a passing statement of "medical issue[s]" satisfies § 3582(c)(1)(A)'s exhaustion requirement, especially given that Defendant now asserts in detail several medical ailments as the basis for relief, (ECF No. 44, PageID.269-71), the court will address the merits of Defendant's motion.

Considering the sentencing factors under 18 U.S.C. § 3553(a), Defendant's early release is not warranted. Title 18 U.S.C. § 3553(a) provides that "[a] court, in determining the particular sentence to be imposed, shall consider[:]"

>(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
>(2) the need for the sentence imposed—
>
>>(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>>(B) to afford adequate deterrence to criminal conduct;
>>
>>(C) to protect the public from further crimes of the defendant; and

> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established . . .
>
> (5) any pertinent policy statement . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

"[D]istrict courts have 'broad discretion to determine what sentence will serve § 3553(a)'s statutory objectives." *United States v. Kincaid*, 805 F. App'x 394, 394 (6th Cir. 2020) (quoting *United States v. Kontrol*, 554 F.3d 1089, 1093 (6th Cir. 2009)) (affirming a district court's denial of compassionate release after consideration of § 3553(a) sentencing factors); *see also Allen*, 2020 WL 5117947, at *2 (quotation removed) ("In a compassionate release proceeding, as at sentencing, the district court is best situated to balance the § 3553(a) factors.").

**"[T]he nature and circumstances of the offense and the history and characteristics of the defendant."** 18 U.S.C. § 3553(a)(1). Defendant has a long criminal history. His first conviction, at age eighteen, was for carrying a concealed weapon in 1986. The next year, he was arrested for attempted possession of cocaine; he pleaded guilty in 1988 and was sentenced to a term of probation in 1995. He violated probation three times.

In 1990, Defendant was arrested for disorderly conduct and possession of cocaine. He was later convicted of both charges and sentenced to a term of probation. In 1993, Defendant was charged with delivery of a controlled substance, less than fifty

6

grams. This time, he received a 180-day jail sentence and probation. By 1998, Defendant was again distributing drugs. He was arrested for delivery or manufacture of cocaine, less than fifty grams, and was sentenced to a year in prison and lifetime probation. While on probation, Defendant received positive drug tests and pleaded guilty to violating probation in 2000. By November 2001, Defendant pleaded guilty to another probation violation and was sentenced to a term of incarceration.

In August 2001, while on probation, Defendant was arrested for narcotics trafficking. He was convicted of delivery or manufacture of controlled substances (cocaine and marijuana), less than fifty grams. Defendant was released from prison in 2003. Overall, the Michigan Department of Corrections twice described Defendant as having poor adjustment to community supervision due to his repeated probation violations.

In December 2013, Defendant was stopped by Detroit Police and stated he had a gun. Police recovered a loaded .9mm handgun with an obliterated serial number in his possession. During pretrial release, Defendant received positive drug tests four times in violation of bond conditions. (ECF No. 17, PageID.57; ECF No. 4, PageID.9.)

Defendant was originally charged with felon in possession of a firearm, 18 U.S.C. § 922(g)(1). (ECF No. 9, PageID.16.) However, after Defendant's presentence report found that he qualified for an Armed Career Criminal enhancement, mandating a mandatory minimum sentence of 180 months imprisonment, the government filed a superseding indictment for possession of a stolen firearm, 18 U.S.C. § 922(j). (ECF No. 21, PageID.62.)

If BOP projections are correct, Defendant has 44% of his sentence yet to serve. (ECF No. 43-1, PageID.234.) He has served fifty-eight months and has a little less than four years more. (*Id.*) Considering Defendant's repeated felony convictions involving drug trafficking and firearms, and his history of violating court-ordered supervision, the nature and circumstances of the offense and Defendant's history do not justify reducing Defendant's sentence by almost half. 18 U.S.C. § 3553(a)(1); 18 U.S.C. § 3582(c)(1)(A).

**"[T]he need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."** 18 U.S.C. § 3553(a)(2)(A). Defendant was possessing a stolen firearm with an obliterated serial number and live rounds after receiving multiple felony convictions. The offense was flagrant as it was serious; Defendant's handgun possession risked the lives and safety of others, as well as himself. Release almost four years early would not reflect the seriousness of Defendant's conduct and would not promote respect for the law. 18 U.S.C. § 3553(a)(2)(A); 18 U.S.C. § 3582(c)(1)(A). In addition, release would not provide time for just punishment. 18 U.S.C. § 3553(a)(2)(A); 18 U.S.C. § 3582(c)(1)(A).

**"[T]he need for the sentence imposed . . . to afford adequate deterrence to criminal conduct."** 18 U.S.C. § 3553(a)(2)(B). Defendant has a history of criminal conduct. He has two firearm-related convictions and five narcotics-related convictions; he has violated terms of probation many times. The punishments for Defendant's crimes have increased from terms of probation to incarceration. Yet Defendant still chose to possess a stolen firearm, despite the risk of significant jailtime. Deterrence up to this

8

point has not been successful at restraining Defendant from engaging in serious criminal behavior. Release several years early would be insufficient to afford adequate deterrence, which is especially important for Defendant. 18 U.S.C. § 3553(a)(2)(B); 18 U.S.C. § 3582(c)(1)(A). At the age of fifty-three, if Defendant is convicted of yet another felony, he may serve a substantial portion of the rest of his life in prison.[2]

**"[T]he need for the sentence imposed . . . to protect the public from further crimes of the defendant."** 18 U.S.C. § 3553(a)(2)(C). Defendant is a repeat felon who has involved himself in narcotics trafficking and illegal firearm possession. Even considering his age of fifty-three, the court believes it is still possible for Defendant to commit further crimes if immediately released, especially considering the reduced deterrent effect early release would create. Further, Defendant has repeatedly violated court ordered supervision and conditions. He was in violation of pretrial bond conditions for his instant conviction. (ECF No. 17, PageID.57; ECF No. 4, PageID.9.) Defendant's proven failure to comply with court mandates is all the more important now given the significant number of orders and rules imposed by various levels of government to slow the spread of COVID-19. *See, e.g.,* Executive Order 2020-147: Masks (July 10, 2020) (executive order in Michigan mandating masks in indoor and outdoor contexts).

---

[2]     The court notes that on April 9, 2020, the U.S. Sentencing Commission issued a detailed report on incarceration and recidivism. United States Sentencing Commission, *Length of Incarceration and Recidivism* (2020). Analyzing data on thousands of federal prisoners, the Commission "consistently found that incarceration lengths of more than 120 months had a deterrent effect" while incarceration of sixty months or less had little to no deterrent effect. *Id.* at 4. Given that Defendant has served fifty-eight months in prison, this study bolsters the court's finding that its original sentence would more likely provide deterrence from further crime, and that the early release as proposed would not.

Defendant's continued risk to public safety and health weighs against compassionate release. 18 U.S.C. § 3582(c)(1)(A); 18 U.S.C. § 3553(a)(2)(C).

**"[T]he sentencing range established."** 18 U.S.C. § 3553(a)(4). Defendant consented in his plea agreement to an advisory guideline range of 120 months imprisonment. (ECF No. 30, PageID.158.) The court sentenced him to 120 months. (ECF No. 31, PageID.163.) Release after fifty-eight months is inconsistent with the established sentencing range. 18 U.S.C. § 3582(c)(1)(A); 18 U.S.C. § 3553(a)(4).

**"[T]he need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."** 18 U.S.C. § 3553(a)(2)(D). Defendant argues he has congestive heart failure, chronic obstructive pulmonary disease ("COPD"), sleep apnea, asthma, hypertension, and high blood pressure. (ECF No. 38, PageID.181.) He states he had a heart attack and mild stroke in 2000. (*Id.*; ECF No. 44-2, PageID.295.) The government points out that Defendant's health records, compiled on July 23, 2020, state that he has several health conditions, including hypertension (high blood pressure), sleep apnea, COPD, and obesity; however, asthma is listed as "misdiagnosis" and congestive heart failure is listed as "resolved." (ECF No. 43-2, PageID.235-38.)

Even with Defendant's conditions, consideration of needed medical care does not necessarily support release. 18 U.S.C. § 3582(c)(1)(A); 18 U.S.C. § 3553(a)(2)(D). Medical records show the BOP provides Defendant diagnosis, checkups, and

prescriptions.[3] (*See, e.g.*, ECF No. 44-2, PageID.292, 304-05.) The BOP conducts regular testing of his temperature, pulse, blood pressure, and other vitals. (ECF Nos. 43-4, 43-5.) Prior to confinement, Defendant was carrying a fully loaded semi-automatic pistol, which not only risked his life and safety, but illustrated a belief that he may be at risk of attack. The court does not know what quality health services he had to prior to incarceration. Confinement removed him from criminal activity, and while in prison, he has had regular access to care for his medical conditions.

Defendant argues the risk of contracting COVID-19 while incarcerated at USP Leavenworth outweigh these benefits. There are 101 inmates and five staff who are currently positive for the virus at Leavenworth. *COVID-19: Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Sep. 10, 2020). A total of 1,594 inmates reside at the prison. *USP Leavenworth*, Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/lvn/ (last visited Sep. 10, 2020). Although these numbers are of concern, the court has been presented with nothing that would allow it to know the extent to which release would mitigate Defendant's health risks. Defendant states he would live in Detroit if released. (ECF No. 44, PageID.284.) However, Detroit and Wayne County have the highest levels of confirmed cases and deaths in the state of Michigan. *Coronavirus: Michigan Data*, State of Michigan, https://www.michigan.gov/coronavirus/0,9753,7-406-98163_98173---,00.html (last visited Sep. 10, 2020). In fact, Wayne County has the seventh highest number of deaths out of all counties in the United States. *COVID-19 United States Cases by County*, John

---

[3] A medical professional at the BOP stated that Defendant has "a compliance between 70 and 80 percent with his prescribed medications." (ECF No. 43-6, PageID.252.)

11

Hopkins University of Medicine, https://coronavirus.jhu.edu/us-map (last visited Sep. 10, 2020).

Given Defendant's history of failing to comply with basic rules and societal expectations, even when violations carry significant jailtime, release may not substantially reduce his risk of exposure. *See How to Protect Yourself & Others*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html (last visited Sep. 11, 2020) (suggesting voluntary precautions to mitigate the spread of COVID-19). In addition, the court has little information or assurance as to the healthcare Defendant would receive in free society. Defendant may well have *less* monitoring and *reduced* access to quality care.

At the same time, the BOP has instituted counter measures to mitigate the spread of COVID-19 in the federal prison system. Inmates' internal movement is suspended, subject to narrow exceptions such as medical examinations; newly arriving inmates who are asymptomatic are quarantined; symptomatic inmates are isolated and treated; social visits are canceled. *BOP Implementing Modified Operations*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Sep. 10, 2020); Federal Bureau of Prisons, U.S. Department of Justice, *Correcting Myths and Misinformation About BOP and COVID-19* (2020).

To release Defendant, the court would be speculating about whether COVID-19 will continue to spread through USP Leavenworth despite the BOP's countermeasures, whether Defendant will contract the disease and develop serious symptoms, and whether and to what extent Defendant will have less risk of contracting COVID-19 and better healthcare in free society. The health risks presented by COVID-19 do not

outweigh the several § 3553(a) factors that weigh in favor of continue incarceration.

Defendant's request for compassionate release will be denied. Accordingly,

    IT IS ORDERED that Defendant's "Motion to Reduce Sentence" (ECF No. 38) is DENIED.

                                    s/Robert H. Cleland                 /
                                    ROBERT H. CLELAND
                                    UNITED STATES DISTRICT JUDGE

Dated:  September 15, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 15, 2020, by electronic and/or ordinary mail.

                                    s/Lisa Wagner                     /
                                    Case Manager and Deputy Clerk
                                    (810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\14-20016.PEGRAM.MotiontoReduceSentence.RMK.RHC.docx