**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

Deborah S. Hunt
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: February 10, 2021

Mr. Paul A. Kuebler
Ms. Erin S. Shaw
United States Attorney's Office
211 W. Fort Street
Suite 2001
Detroit, MI 48226

Mr. Todd Shanker
Ms. Casey Nicole Swanson
Federal Defender Office
613 Abbott Street
Suite 500
Detroit, MI 48226

Re: Case No. 20-1906, *USA v. Louis Pegram*
Originating Case No. : 2:14-cr-20016-1

Dear Counsel,

The Court issued the enclosed opinion today in this case.

Sincerely yours,

s/Cathryn Lovely
Opinions Deputy

cc: Ms. Kinikia D. Essix

Enclosure

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0085n.06

No. 20-1906

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Feb 10, 2021
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

LOUIS PEGRAM,

Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

OPINION

Before: COLE, Chief Judge; STRANCH and THAPAR, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Louis Pegram appeals the district court's denial of his motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). We **AFFIRM**.

## I. BACKGROUND

In 2015, Pegram was sentenced to ten years in prison and three years of supervised release after pleading guilty to possession of a stolen firearm under 18 U.S.C. § 922(j). Between his first appearance and his surrender to custody, he was free on bond without incident. To date, he has completed over half his custodial sentence.

In July 2020, Pegram filed a motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) (commonly known as the "compassionate release" provision). Citing the Probation Office's presentence report (PSR), he stated that "for decades," he had "congestive heart failure, chronic obstructive pulmonary disease (COPD), sleep apnea, asthma, hypertension and high blood pressure"; "require[d] a CPAP machine equipped with oxygen"; and had previously

suffered a heart attack and stroke. The PSR also acknowledged that the Michigan Department of Corrections had described Pegram's health as "poor" and that Pegram's health had prevented him from working most jobs since 1998. In his reply to the Government's response to his motion, Pegram cited the Bureau of Prisons' (BOP) records to show that while incarcerated, he had also developed "hypertensive chronic kidney disease . . . [in] Stage III," "hypertensive nephrosclerosis," "arthritis," "intestinal disease with serious colon cancer concerns," "borderline diabetes," "obesity," "gout," "edema," "hyperlipidemia," "venous insufficiency," and "gross hematuria," in addition to taking a prescribed immunosuppressant medicine. He argued that his very poor cardiac and respiratory health made him highly susceptible to severe COVID-19 with long-lasting effects (that is, assuming successful recovery from an active infection). And he emphasized that when he contracted pneumonia while in custody in 2015, he had to be intubated in an intensive care unit, strongly suggesting a poor prognosis if he were to be infected with COVID-19.

The district court denied Pegram's motion. It stated, correctly, that it could reduce Pegram's sentence if it determined that "extraordinary and compelling reasons warrant such a reduction" and if the factors outlined in 18 U.S.C. § 3553(a) weighed in favor of release. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). And it treated Pegram as having exhausted his administrative remedies, choosing to reach the merits of his motion. *See United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020) (holding that the exhaustion requirement is nonjurisdictional). But it also reasoned that a sentence reduction had to comport with the Guidelines' policy statement in USSG 1B1.13, which delineate a set of extraordinary and compelling reasons. The district court noted the intracircuit disagreement at the time, briefed by the parties, of whether § 1B1.13 applied to motions filed by incarcerated people

themselves (as opposed to by the Director of the BOP). Then, without drawing explicit conclusions regarding the ample evidence Pegram provided of his poor health, the district court decided that the § 3553(a) factors weighed against release.

## II. DISCUSSION

We "must apply the law in effect at the time [we] render [our] decision," *Henderson v. United States*, 568 U.S. 266, 276 (2013) (quoting *Thorpe v. Hous. Auth. of City of Durham*, 393 U.S. 268, 281 (1969)), and since the district court's September 15, 2020, order, that law has changed significantly. "For thirty-four years, only the BOP's Director could file motions for compassionate release," and "the Director seldom wielded this significant power." *United States v. Jones*, 980 F.3d 1098, 1104 (6th Cir. 2020). In an effort "to boost grants of compassionate release," Congress passed the First Step Act of 2018, which allows imprisoned people to file motions for compassionate release themselves as long as they exhaust their administrative remedies or wait 30 days after the warden's receipt of a compassionate release request (whichever comes first). *Id.* at 1104–05; *see Alam*, 960 F.3d at 832–34. Last year, we clarified that "sentence-modification decisions pursuant to § 3582(c)(1)(A) embody a three-step inquiry: [(1)] district courts must 'find' both that 'extraordinary and compelling reasons warrant [a sentence] reduction' and that [(2)] 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission' before [(3)] considering all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." *Jones*, 980 F.3d at 1101 (second alteration in original) (quoting 18 U.S.C. § 3582(c)(1)(A)); *see also United States v. Ruffin*, 978 F.3d 1000, 1004–05 (6th Cir. 2020). And we held that for purposes of the third requirement, USSG 1B.13 "is not an 'applicable' policy statement in cases where incarcerated persons file their own motions in district court for compassionate release," so district courts "may skip step two of the § 3582(c)(1)(A) inquiry." *Jones*, 980 F.3d at 1101, 1111; *see also Elias*, 984 F.3d at 519.

In other words, "district courts have full discretion . . . to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Jones*, 980 F.3d at 1109; *see also Elias*, 984 F.3d at 519–20. Simultaneously, though, "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." *Elias*, 984 F.3d at 519. Whatever its basis, we review such a decision for abuse of discretion. *Jones*, 980 F.3d at 1112.

Here, the district court employed the wrong legal standard by considering its discretion circumscribed by § 1B1.13. This was error.[1] After discussing the limits § 1B1.13 putatively imposed, the district court then analyzed only the § 3553(a) factors, choosing not to determine whether Pegram had established extraordinary and compelling reasons for release. Our cases allow that choice. *See Elias*, 984 F.3d at 519. In *United States v. Hampton*, No. 20-3649, --- F.3d ----, 2021 WL 164831, at *3 (6th Cir. Jan. 19, 2021), for instance, we examined an order denying compassionate release that both did not consider the correct ambit of district courts' discretion to determine extraordinary and compelling reasons and did not sufficiently discuss the § 3553(a) factors. We opined that if it had done the latter, "that determination likely would have provided us with a sufficient, alternative basis for review." *Id.* (citing *Ruffin*, 978 F.3d at 1006). Here, the district court's order discussed the § 3553(a) factors and concluded that "[t]he health risks presented by COVID-19 do not outweigh the several § 3553(a) factors that weigh in favor of continue[d] incarceration." Under our precedent, that is a sufficient, alternative basis for review.

[1] The abuse-of-discretion standard "does not preclude an appellate court's correction of a district court's legal or factual error." *Jones*, 980 F.3d at 1112 (quoting *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563 n.2 (2014)). A district court's "misread[ing] the meaning of the extraordinary-reason requirement" or "interpret[ing] the law to bar it from granting a reduction when, in fact, it has discretion to do so" can constitute an abuse of discretion. *Id.* (quoting *United States v. Keefer*, 832 F. App'x 359, 363 (6th Cir. 2020)); *see also Ruffin*, 978 F.3d at 1005. We note, rather than correct, the district court's error here because it asserted an alternative, appropriate basis for denying relief, which our cases have held is sufficient. *See Elias*, 984 F.3d at 519.

By contrast, this is not a situation in which "the order relie[d] exclusively on an impermissible consideration"—i.e., an erroneous application of § 1B.13—which would require us to vacate and remand for reconsideration. *United States v. Sherwood*, No. 20-4085, --- F.3d ----, 2021 WL 345405, at *2 (6th Cir. Feb. 2, 2021).

We may affirm a denial of a compassionate relief motion based on the district court's weighing of the § 3553(a) factors alone. *Elias*, 984 F.3d at 519. And we have noted that "[t]he district court is best situated to balance the § 3553(a) factors." *Jones*, 980 F.3d at 1114 (quoting *United States v. Kincaid*, 802 F. App'x 187, 189 (6th Cir. 2020)). Given the standard of review we apply to these decisions, we cannot confidently say on this record that the district court "relie[d] on clearly erroneous findings of fact, applie[d] the law improperly, or use[d] an erroneous legal standard" when weighing the § 3553(a) factors. *Id.* at 1112 (quoting *United States v. Pembrook*, 609 F.3d 381, 383 (6th Cir. 2010)).

## III. CONCLUSION

Therefore, we **AFFIRM** the district court's order denying Pegram's motion for compassionate release.